UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CAREY LOWES,                          Case No. 12-13077

        Plaintiff,                          Thomas L. Ludington
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 13)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On July 12, 2012, plaintiff James Carey Lowes filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Thomas L. Ludington referred this matter to the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability insurance benefits and supplemental security income benefits.  (Dkt. 3).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 11,

13).

### B.     Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance benefits and supplemental security income benefits on April 15, 2009, alleging that he became disabled on December 31, 2006.  (Dkt. 8-5, Pg ID 118-21, 125-27). The claim was initially disapproved by the Commissioner on September 3, 2009. (Dkt. 8-3, Pg ID 56-59).  Plaintiff requested a hearing and on August 24, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Donald G. D'Amato, who considered the case de novo.  (Dkt. 8-2, Pg ID 40-54).  In a decision dated October 22, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 23-36).  Plaintiff requested a review of this decision on November 10, 2010.  (Dkt. 8-4, Pg ID 111, 116).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 15, 2012, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 17-20); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1970 and was 36 years of age on the alleged disability onset date and 39 years old at the time of the administrative hearing. (Dkt. 8-2, Pg ID 43). Plaintiff has a limited education (through 8th grade) with special education classes, and his past relevant work history includes positions as a stock person, dishwasher, fireplace installer, machine operator, and cleaning person. (Dkt. 8-6, Pg ID 158, 169-70, 179). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 8-2, Pg ID 28). At step two, the ALJ found that plaintiff's mild mental retardation was "severe" within the meaning of the second sequential step, but that his status post-left inguinal hernia repair was not a severe impairment. (Dkt. 8-2, Pg ID 28-29). At step three, the ALJ found that plaintiff did not have an impairment that met or medically equaled one of the listings in the regulations. (Dkt. 8-2, Pg ID 29-31).

The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: work that is non-production oriented; simple, unskilled, with one, two, or three step instructions; reading, writing and math should not be a part of any job responsibilities; and the work environment must

have only occasional changes in the work setting.  (Dkt. 8-2, Pg ID 31-34).  At step

four, the ALJ found that plaintiff was able to perform his past relevant work as a

dishwasher, which is unskilled in complexity and medium in exertional demand

and did not require the performance of work-related activities precluded by

plaintiff's RFC.  (Dkt. 8-2, Pg ID 34).  The ALJ then went on, at step five of the

sequential analysis, and denied plaintiff benefits because plaintiff could perform a

significant number of jobs available in the national economy.  (Dkt. 8-2, Pg ID 34-

35).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred in finding that plaintiff did not have an

impairment that met Listing 12.05B or 12.05C.  Listing 12.05 provides:

> 12.05 Mental Retardation: Mental retardation refers to
> significantly subaverage general intellectual functioning
> with deficits in adaptive functioning initially manifested
> during the developmental period; i.e., the evidence
> demonstrates or supports onset of the impairment before
> age 22.
>
> The required level of severity for his disorder is met
> when the requirements in A, B, C, or D are satisfied.
>
>           * * *
>
> B.  A valid verbal, performance, or full scale IQ of 59 or
> less; OR
>
> C.  A valid verbal, performance, or full scale IQ of 60
> through 70 and a physical or other mental impairment
> imposing an additional and significant work-related

4

limitation of function; OR

D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

>   1.  Marked restriction of activities of daily living; or
>
>   2.  Marked difficulties in maintaining social functioning; or
>
>   3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>
>   4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, App. 1, § 12.05.

Plaintiff underwent a psychological evaluation by Milton M. Green, M.A., School Psychologist with the Brandon School District, in January 1982, when plaintiff was 11 years old and in the 5th grade.  (Dkt. 8-7, Pg ID 239-44).  As part of this evaluation, plaintiff was administered the Wechsler Intelligence Scale for Children (WISC-R), on which he obtained a verbal IQ score of 66, performance IQ score of 60, and a full scale IQ score of 59.  (*Id.*).   Plaintiff was classified as Educable Mentally Impaired and below the 1st percentile rank, with most of the subtest scaled scores in the low average to borderline range.  (*Id.*).  Plaintiff underwent additional cognitive and intelligence testing in 1986 by the Holly School District, when plaintiff was 15 years old.  (Dkt. 8-7, Pg ID 221-22).  Plaintiff was again administered the WISC-R and obtained a verbal IQ score of 62

(mild mental retardation range), a performance IQ score of 72 (borderline range), and a full scale IQ score of 65 (mild mental retardation range). (*Id.*). And, in August 2009, plaintiff underwent a consultative psychological evaluation at the request of the state agency. Plaintiff was administered the Wechsler Adult Intelligence Scale (WAIS-III) and received a verbal IQ score of 69, a performance IQ score of 73 and a full-scale IQ score of 68, in the extremely low to borderline ranges. (Dkt. 8-7, Pg ID 252-58). Plaintiff was diagnosed with mild mental retardation and assigned a Global Assessment of Function ("GAF") Score of 54, indicating moderate symptoms. (*Id.*).

According to plaintiff, the ALJ erred in failing to find that plaintiff met Listing 12.05B because he had a valid IQ score of 59 in 1982, when he was eleven years old. The Social Security regulation states that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D). Thus, plaintiff argues, his 1986 result for purposes of 12.05 is 62 not 65, and his 1982 result is 59. Plaintiff argues that the ALJ incorrectly concluded that the 1982 score of 59 was not valid or a true picture of plaintiff's ability to function at the time of the decision and that his 2009 IQ score of 68 "illustrat[ed] an improvement in his intelligence." Plaintiff contends that there is no scientific

evidence that an IQ can "get better."  Plaintiff argues that his below-age 22 IQ numbers are given primacy and deference by Listing 12.05, but the ALJ "turns that up-side-down" and relied instead on the later 2009 test scores.  Plaintiff also argues that the ALJ erred in relying on plaintiff's own assessments of the levels of his daily activities in finding that plaintiff has worked and "manages his own personal care, prepares meals, performs household chores, pay bills . . ." because "he is in effect using the findings and observations of an individual with an IQ in the lowest 1% of the population on which to base his decision."

Plaintiff also contends that the school psychologists who evaluated plaintiff in 1982 should be considered his "treating sources" because they were not hired for litigation purposes and had access to plaintiff and his educational environment, and that their opinions are entitled to deference pursuant to 20 C.F.R. § 404.1527(d)(2). Plaintiff argues that the school psychologists' IQ findings are not "markedly different" than the IQ findings of the state agency consultative examiner in 2009. According to plaintiff, his receipt of an IQ score of 59 should have resulted in an "automatic finding" by the ALJ that plaintiff met the listing and is disabled and thus a remand for an award of benefits is indicated, rather than a remand for further proceedings.

Plaintiff also contends that the 1986 "MET Report" by the Pontiac School District notes that "[e]vidence of [plaintiff's] impairment is shown in his slowness

in grasping concepts and following directions.  Vineland (test) completed as part of

psychological test (7/86).  Results indicate impairment in adaptive behavior."

(Dkt. 8-7, Pg ID 221).  In addition, the ALJ failed to mention that a school

language pathologist noted in 1986 that plaintiff's speech was "difficult to

understand and not sufficient for classroom needs" (Dkt. 8-7, Pg ID 225), and the

social security intake worker noted plaintiff's "difficulties" with reading,

understanding, coherency, concentrating, answering, and writing, further noting

that plaintiff "appeared unkempt and lacked dental hygiene.  He stated that he had

a lot of trouble reading the application and needed help with it.  It was difficult for

him to answer the questions that were being asked of him."  (Dkt. 8-6, Pg ID 165).

All of these findings, according to plaintiff, demonstrate that plaintiff met Listing

12.05B.

Plaintiff also argues that he should have been found to have met Listing

12.05C as well.  The 2009 consultative examiner found that plaintiff had a

"significant impairment in his visual motor coordination" and that his IQ scores

were in the 60s.  (Dkt. 8-7, Pg ID 252-58).  Thus, plaintiff concludes, he met

Listing 12.05C.  Plaintiff also argued that the ALJ failed to include a "significant

limitation in visual motor coordination" in his hypothetical questions to the

vocational expert.  Plaintiff relies on *Dagon v. Comm'r of Soc. Sec.*, 470 Fed.

Appx. 454 (6th Cir. 2012) in support of his argument.   In that case, the Sixth

Circuit awarded benefits to the plaintiff, finding the evidence established that the plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive functioning before the age of 22, a valid IQ score between 60 and 70, and anxiety disorder and a reading disorder, and thus a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Id.* at 464.

### C.      Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff was not disabled.  According to the Commissioner, the ALJ's decision included an extensive analysis of the medical evidence concerning plaintiff's mental impairments, and indicates that the ALJ expressly considered the applicability of the Listings under 12.00, which covers mental disorders.  First, the ALJ explained why he did not find Listing 12.05B met in this case, explaining that he did not accept the validity of the only IQ score of record that was 59 or lower, which was plaintiff's 1982 full scale IQ score, because the later IQ scores all exceeded 59.  (Dkt. 8-2, Pg ID 29).  Further, the regulations make clear that scores alone do not tell the full story of whether a listing is met, but instead recognize that "results of intelligence tests are only part of the overall assessment."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6).

According to the Commissioner, the introductory language to the mental

listings indicates that "the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." *See id.* The Commissioner argues that the 1982 scores did not address the validity of the scores or whether they were consistent with plaintiff's developmental history, but the evaluators did note that plaintiff had to be coaxed to complete the material on the formal testing and exhibited distracted behavior whenever he felt challenged by the material, getting easily frustrated and rarely checking his work. (Dkt. 8-7, Pg ID 240). The Commissioner argues that these facts suggest the absence of full effort during testing. The Commissioner further argues that substantial evidence supports the ALJ's decision not to accept the 59 IQ test score, stating that the regulations note that IQ tests "tend to stabilize by age 16" and that "IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 112.00(D)(10). In contrast, the regulations note that "IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." *Id.*

The Commissioner also contends that other measures of intellectual functioning in the record supported the ALJ's conclusion that the 1982 score, achieved at age 11, was not a true reflection of plaintiff's intellectual functioning

level.  Namely, four years later, when plaintiff was closer to age 16, he underwent

another battery of IQ test that revealed a verbal IQ score of 62, a performance IQ

score of 72, and a full scale IQ score of 65, and the 2009 test at age 38 revealed a

full scale IQ score of 68, illustrating extremely low to borderline intellectual

functioning.  According to the Commissioner, the ALJ properly found that these

subsequent test results reflect a stabilized IQ level and show a longitudinal picture

of intellectual functioning that did not equate with the 12.05B IQ criterion.  The

ALJ further properly found that plaintiff had worked at substantial gainful activity

levels for many years and engaged in a wide range of other daily activities that

evidenced his ability to function independently, including managing his personal

care, preparing meals, performing household chores, paying bills, and attending

church on a weekly basis.  (Dkt. 8-2, Pg ID 29).

        The Commissioner also argues that the ALJ properly found that plaintiff

failed to meet Listing 12.05C because, although plaintiff had a valid IQ score of 60

through 70, he lacked the requirement in the listing of "a physical or other mental

impairment imposing an additional and significant work-related limitation of

function."  (Dkt. 8-2, Pg ID 29).  Plaintiff received no other psychiatric diagnoses

or treatment, and there was no evidence that a prior hernia operation affected his

current ability to perform basic work activities.  The state agency reviewing

physician found no evidence of a severe, medically determinable physical

impairment.  (Dkt. 8-7, Pg ID 285).

The Commissioner also contends that the ALJ properly found that plaintiff lacked the requisite deficits in adaptive functioning, noting that plaintiff maintained a diverse range of activities, could drive a car, and worked for many years in a wide range of occupations that included fast food worker, stock person, dishwasher, fireplace installer, machine operator, and cleaning person.  (Dkt. 8-2, Pg ID 29, 32; 8-6, Pg ID 169-70, 179).  Further, plaintiff participated in regular elective classes, indicating that he was capable of functioning and learning alongside his peers in mainstream classes.  (Dkt. 8-2, Pg ID 32-33; 8-7, Pg ID 236).  Finally, Dr. Balunas, the state agency reviewing psychologist, reviewed the medical evidence and did not opine that plaintiff's impairments met or equaled any Listing, but did opine that plaintiff could perform simple, routine, unskilled work. (Dkt. 8-7, Pg ID 259-72).  Thus, the Commissioner concludes, substantial evidence supports the ALJ's Step Three finding and this Court should affirm the Commissioner's decision finding that plaintiff was not disabled.

### D.  Plaintiff's Reply to the Commissioner's Motion for Summary Judgment

Plaintiff argues in response to the Commissioner's motion that the Commissioner erred in relying on section 112.00 of the regulations because that section only applies to *child* disability determination claims, while section 12.00 applies to *adult* disability determination claims, as at issue here.  According to

12

plaintiff, this same argument was made by the defendant in *Dragon*, and that court, in footnote 2, rejected the argument and the applicability of 112.00 to an adult claimant. Plaintiff contends that section 12.00 specifically requires that the IQ scores be tests from "before age 22." Plaintiff also argues that the Commissioner, and the ALJ, erred in even discussing all of the verbal, performance and full scale IQ scores because the regulations provide that only the lowest score in a test is the proper standard. Plaintiff further contends that neither the ALJ nor the Commissioner provides any support for their position that the age 15 IQ score of 62 somehow invalidates the age 11 IQ score of 59, and the fact that plaintiff has a score of 62, "that is barely above the listing does not invalidate the 59 that meets the listing." Plaintiff also argues that he met Listing 12.05C, based on the consultative examiner's finding of "a significant impairment in [plaintiff's] visual motor coordination." Plaintiff concludes that the Court should reverse the decision of the Commissioner award plaintiff benefits because further factual development is unnecessary.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

15

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

17

substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

18

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.    Analysis and Conclusions

Plaintiff argues that the ALJ erred in finding that plaintiff did not meet Listing 12.05B and/or 12.05C.[1]  In order to meet the requirements of a listed

---

[1] Plaintiff does not argue that he met Listing 12.05A.  (Dkt. 11).  And, although plaintiff listed 12.05D in his motion, he fails to offer any argument that he meets this Listing, and thus has waived this argument.  *See O'Neill v. Comm'r of Soc. Sec.*, 2013 WL 1436648, at *6 (W.D. Mich. Apr. 9, 2013) ("Issues raised in a perfunctory manner are deemed waived.") (citing *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012)).  The undersigned notes, however, that the ALJ thoroughly evaluated whether plaintiff's mental impairment satisfied Listing 12.05D and found that the requirements of that Listing were not met because plaintiff had mild restrictions in activities of daily living and social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation, and thus did not have marked restrictions in at least two of those categories.  (Dkt. 8-2, Pg ID 30-31).

19

impairment, a plaintiff bears the burden of proof that *all* of a Listing's criteria are met. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (a claimant's impairment must meet *every element* of a Listing before the Commissioner may conclude that he is disabled at Step III). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

Listing 12.05 provides the criteria used to determine when "mental retardation is severe enough to preclude gainful activity." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). To qualify as disabled under Listing 12.05, a claimant needs to satisfy both the diagnostic description in the introductory paragraph of the Listing and one of the four sets of criteria found in Subparts A through D. *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). The ALJ conducted a review of plaintiff's mental impairments and provided a detailed explanation of the reasons why plaintiff's mental impairment was not compliant with Listing 12.05. (Dkt. 8-2, Pg ID 29-31).

Plaintiff was diagnosed with mild mental retardation and the ALJ found that this was a severe impairment. (Dkt. 8-2, Pg ID 28). The undersigned notes that plaintiff's diagnosis with mental retardation is not dispositive of whether he meets Listing 12.05B or 12.05C. *See Pinkey v. Astrue*, 2012 WL 1095955, at *3 (N.D.

Ohio Mar. 30, 2012) (plaintiff's diagnosis with mild mental retardation not

sufficient to satisfy Listing 12.05C because plaintiff must also have another

"physical or mental impairment imposing an additional and significant work-

related limitation of function"); *Martin v. Astrue*, 2008 WL 3983830, at *7-8 (S.D.

Ohio Aug. 27, 2008) (plaintiff failed to meet Listing 12.05C, even with a finding

of a severe disability of mild mental retardation, because plaintiff failed to

demonstrate the existence of another physical or mental limitation imposing an

additional work-related limitation of function). In other words, a formal medical

diagnosis of mental retardation is not conclusive one way or the other. *Cf. Higgs*

*v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an

impairment], of course, says nothing about the severity of the condition.").[2] The

ALJ then specifically evaluated plaintiff's mental impairment under the

requirements of Listing 12.05, and concluded that plaintiff did not meet the Listing

under 12.05A, B, C or D. (Dkt. 8-2, Pg ID 29-31). The undersigned finds that the

ALJ's decision is supported by substantial evidence.

    First, as to Listing 12.05B, plaintiff argues that the ALJ erred in failing to

accept his 1982 IQ score of 59 as controlling and qualifying him for presumptive

---

    [2] The undersigned notes, however, that the ALJ's conclusion that plaintiff has a severe impairment of mild mental retardation satisfies the requirement of the introductory paragraph of Listing 12.05 of "significantly subaverage general intellectual functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *See Carwile v. Astrue*, 2011 WL 2601450, at *4 n. 7 (M.D. Ala. June 30, 2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05).

disability under that Listing.  However, the ALJ specifically acknowledged plaintiff's 1982 IQ score of 59 and fully explained the reasons why he did not accept plaintiff's score at age 11 as a true picture of plaintiff's current ability to function.  The ALJ noted that plaintiff received a full-scale IQ score of 68 in 2009, plaintiff had engaged in substantial gainful activity for several years, and plaintiff has engaged in a wide range of activities of daily living in addition to working–namely, plaintiff manages his own personal care, prepares complete meals, performs household chores, pays his bills, and attends church on a weekly basis–confirming he can function independently.  (Dkt. 8-2, Pg ID 29).  "'It was proper for the ALJ to consider other evidence in the record when determining whether [the plaintiff's] IQ scores were valid' and look to whether 'the record contains substantial evidence to support a finding that [the plaintiff's] IQ scores were not an accurate reflection of his intellectual capabilities.'"  *See Remsing v. Comm'r of Soc. Sec.*, 2010 WL 1141613, at \*7 (E.D. Mich. Feb. 4, 2010) (citing *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007)), *adopted by* 2010 WL 1141612 (E.D. Mich. Mar. 24, 2010); *see also id.* ("The daily activities described by Plaintiff herself–that she is able to watch television, listen to music, play games, dress herself, shop, and clean her room–are inconsistent with the one IQ score that satisfied 12.05(B).").

In addition, plaintiff's test scores at age 15 (Verbal score of 62, Performance

score of 72 and Full Scale score of 65) are very similar to his 2009 test scores

(Verbal score of 69, Performance score of 73, Full Scale score of 68), lending

further support for the ALJ's reliance of the 2009 test results of a truer indicator of

plaintiff's current ability to function.  (Dkt. 8-7, Pg ID 221-22, 252-58).  And,

other courts have found that the ALJ's decision not to rely on an adult claimant's

IQ test results from their childhood was proper, especially when there are more

current scores.  *See e.g.*, *Lewis v. Astrue*, 2009 WL 1904319, at *3 (S.D. Ala. July

1, 2009) (finding "the ALJ's decision not to rely on Lewis's IQ tests from twenty

years earlier was proper" and that "[t]he ALJ's finding that the intervening years

and evaluations were a more reliable indication of Plaintiff's abilities is supported

by substantial evidence"); *Williams v. Apfel*, 1998 WL 852872, at *4 (N.D. Ill.

Dec. 4, 1998) (finding that current test scores "more accurately reflect Williams'

current level of intellectual functioning" and "Williams also fails to direct this

Court's attention to any authority indicating that he can rely on thirty-year-old

scores–particularly when more current scores are available."); *see also Remsing*,

2010 WL 1141613, at *7 ("ALJ's decision not to rely on the IQ score derived from

a 'one-time examination by a non-treating psychologist' was not improper since

the score was 'inconsistent with the claimant's daily activities and behavior'" and

"were not an accurate reflection of [her] intellectual capabilities").

      Plaintiff argues that the Sixth Circuit opinion*, Dragon v. Commr' of Soc.*

*Sec.*, 470 Fed. Appx. 454 (6th Cir. 2012), supports his argument that he meets

Listing 12.05B.  However, the Court in *Dragon* addressed whether the plaintiff met

Listing 12.05C, not 12.05B.  *Id.* at 460.[3]  Further, the *Dragon* case does not stand

for the proposition that older test scores are presumptively controlling, but rather,

the court explained that older test scores from the plaintiff's childhood were

"relevant to establish the manifestation of [plaintiff's] impairment before the age of

22," and that the ALJ lacked substantial evidence to determine that the plaintiff's

childhood IQ scores were invalid and that the plaintiff had failed to establish

"significantly subaverage general intellectual functioning with deficits in adaptive

functioning initially manifested during the developmental period."  *Id.* at 461.  The

ALJ here did not determine that plaintiff's 1982 test score was invalid and did not

contest that plaintiff's mild mental retardation manifested before the age of 22, and

thus his decision is not at odds with *Dragon*.  Rather, the ALJ conducted a

thorough review of the record evidence and concluded that plaintiff's more recent

test scores (which were consistent with his age 15 test scores) more accurately

reflected plaintiff's current level of intellectual functioning.

Plaintiff's argument that the school psychologist who conducted plaintiff's

testing in 1982 should be given deference as a treating source also fails.  The

---

[3]  Although the court did note in a footnote that plaintiff could likely establish disability
under Listing 12.05B or 12.05D as well.  *Id.* at 464 n.5.

undersigned notes that a school psychologist is considered an acceptable medical source "for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only." 20 C.F.R. § 416.913(a)(2). However, under the circumstances of this case, the school psychologist's limited involvement here was that of a nontreating source. *See* 20 C.F.R. § 416.902 (defining nontreating source as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing relationship with you"). *See e.g.*, *Alworden ex rel. K.L.A. v. Comm'r of Soc. Sec.*, 2011 WL 1118611, at *4 (W.D. Mich. Jan. 24, 2011) (school psychologist who evaluated plaintiff two times (in 2003 and 2006) is not entitled to deference as that of a treating source), *adopted by* 2011 WL 1102848 (W.D. Mich. Mar. 25, 2011) (citing *Connell L. v. Astrue*, 2010 WL 3185859, at *9-10 (E.D. Cal. Aug. 11, 2010) (a school psychologist who evaluates a child's disability for preparation of an Individual Education Plan ("IEP") is not entitled to deference as a treating source)). Thus, the ALJ did not err in failing to treat the school psychologist as a treating source.

The ALJ's finding that plaintiff failed to meet Listing 12.05C is also supported by substantial evidence. The ALJ noted that plaintiff had IQ scores of 60 through 70, but that he did not have another physical or mental impairment that imposed an additional work-related limitation, and thus did not satisfy all of the

25

elements of the Listing. (Dkt. 8-2, Pg ID 29-30). The ALJ noted that plaintiff did not receive other psychiatric diagnoses, did not receive treatment for his cognitive limitations, and plaintiff denied obtaining mental health services or treatment and admitted that he did not take any medication, and thus did not have a mental impairment that affected his work performance. (*Id.*). The ALJ also properly found that the only physical impairment in the record is plaintiff's status post-left inguinal hernia repair operation, and that this impairment was not severe. *See Lipford v. Sec'y of Health & Human Servs.*, 762 F.2d 1009, 1985 WL 13103, at *2 (6th Cir. Mar. 29, 1985) ("Since non-severe impairments do not 'significantly limit . . . physical or mental abilities to do basic work activities,' . . . Lipford does not satisfy the requirement of § 12.05(C) that a physical ailment accompanying an IQ between 60 and 69 must impose 'additional and significant work-related limitation of function.'"). Plaintiff testified that he has occasional pain, but he did not seek treatment for hernia-related pain or ask for medication, and thus there is no evidence that plaintiff has a physical impairment that affects his work performance. (*Id.*). Further, Dr. Maria M. Lagarda, M.D., the State agency reviewing physician, found no evidence of a severe, medically-determinable physical impairment. (Dkt. 8-7, Pg ID 285).

Plaintiff's reliance on the state agency consultative examiner's finding that "[plaintiff's] Bender Gestalt test results indicate that there is significant impairment

in his visual motor coordination" (Dkt. 8-7, Pg ID 254) as evidence of a physical or

mental impairment that imposed an additional work-related limitation and thus

satisfying the Listing, is misplaced.  The examiner never opined that this finding

from one of the tests administered evidenced a physical or mental impairment

imposing an additional work-related limitation on plaintiff within the meaning of

Listing 12.05C, and plaintiff has not cited any record evidence that would support

such a finding.  Moreover, the state agency reviewing psychologist, Dr. Leonard C.

Balunas, Ph.D., did not find any similar significant limitation and opined that

plaintiff "is able to perform simple, routine unskilled work involving 1 and 2 step

instructions with limited need for sustained concentration and only occasional,

minor changes in the work setting."  (*Id.*).   Thus, the ALJ's finding that there is no

other impairment, mental or physical, that imposes another significant work-related

limitation of function is supported by substantial evidence.

Accordingly, after review of the record, the undersigned concludes that the

decision of the ALJ, which ultimately became the final decision of the

Commissioner, is within that "zone of choice within which decisionmakers may go

either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the

decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 17, 2013                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>July 17, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Phillip R. Fabrizio, William L. Woodard, AUSA, Jessie Wang-Grimm, and the Commissioner of Social Security</u>.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7850