UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES CAREY LOWES,

       Plaintiff,                     Case No. 12-13077
                                         Honorable Thomas L. Ludington

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER OVERRULING OBJECTIONS,
ADOPTING REPORT AND RECOMMENDATION,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    James Lowes believes that his mental impairments, with or without his alleged visual impairments, entitle him to Social Security Disability (SSD) benefits. Because Lowes's mental impairments alone do not qualify him for benefits, and because any visual impairments do not affect his ability to work, Lowes's claims are without merit. United States Magistrate Judge Michael J. Hluchaniuk's report and recommendation will be adopted, Lowes's objections to that report will be overruled and his motion for summary judgment will be denied, and the Commissioner of Social Security's motion for summary judgment will be granted. The Commissioner's decision to deny benefits will be affirmed.

**I**

**A**

    Lowes was born on December 31, 1970. Unfortunately, as he moved through elementary school, it became clear that his intellectual abilities were not on par with those of his peers. So he was enrolled in special education classes, and he continued his education only through the

eighth grade.  In 1982, when he was 11-years-old, Lowes underwent a psychological evaluation by Milton M. Green, M.A., a school psychologist with the Brandon School District.  As part of this evaluation, Green administered the Wechsler Intelligence Scale for Children (WISC-R), on which Lowes obtained a verbal IQ score of 66, a performance IQ score of 60, and a full-scale IQ score of 59.  Admin. R. 220, ECF No. 8.  He was classified as Educable Mentally Impaired, below the 1st percentile, with "[m]ost of the subtest scaled scores [falling] in the low average to borderline range."  *Id*. at 220–21.

On July 9, 1986—at the age of 15—Lowes was reevaluated by T. Campbell.[1]  The WISC-R was again administered, and this time Lowes achieved a verbal IQ score of 62, a performance IQ score of 72, and a full-scale IQ score of 65.  *Id*. at 200.  Finally, on August 10, 2009, he underwent evaluation for a third time.  The Wechsler Adult Intelligence Scale-III (WAIS-III) was administered, and Lowes obtained a verbal IQ score of 69, a performance IQ score of 73, and a full-scale IQ score of 68.  *Id*. at 231.

Although Lowes attempted to earn his GED at two different schools, he "could never keep up with the learning so [he] gave up because it was way to [sic] hard[.]"  *Id*. at 184.  Lowes then transitioned to the working world.  Between 1993 and 2008, he was sporadically employed in at least six different positions; including retail worker, grocery store clerk, machine operator, fireplace installer, and dishwasher.  *Id*. at 138.  Lowes testified that he worked for McDonald's in 2008 (for approximately one year), and that his position required "[c]leaning the tables, washing dishes, and taking out garbage."  *Id*. at 31.  During the August 2009 evaluation, he indicated that he was fired from McDonald's "for going in late and having a hernia."  *Id*. at 234.  In 2007, Lowes was fired from Rite Aid after approximately three years of service for "arriving late to

---

[1] The records indicate T. Campbell, "School Psychologist," conducted the evaluation, but those records do not provide the individual's full name or qualifications.  *See* Admin. R. 200.

- 2 -

work." *Id*. His longest employment, as a dishwasher with Old Country Buffet, ended when he quit because of pressure from his now ex-wife (apparently, she did not care for Lowes riding with his sister to work, who also worked at the restaurant). *Id*. at 234–35. With this working history, Lowes alleges that he became permanently disabled as of December 31, 2006.

On April 15, 2009, Lowes submitted applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., and for supplemental security income benefits under Title XVI of that Act, 42 U.S.C. § 1381 *et seq*. In the related adult disability report, he indicated that his learning disability and previous hernia surgery limit his ability to work. *Id*. at 137. He wrote:

> My Disability limits the kinds of jobs that I can do. I have trouble dealing with money.I am not able to count back any change.I have trouble following directions on the job.I have to be shown how to do things over and over again.I have trouble getting to work on time I have trouble sleeping at night.I cannot sit for to [sic] long.I have problems with my memory.

*Id*. According to Lowes, he cannot keep a job "[d]ue to [his] Disability." *Id*.

In Lowes's adult disability report, he indicated that he can speak and understand English, and read and write more than simply his name. *Id*. at 136. He also established (in an adult function report) that he takes care of pets—feeding them and taking them outside—with help from his nephew Justin. *Id*. at 171. Lowes reported no problems with maintaining his own personal care and indicated that, with reminders, he can brush his own teeth, shave, comb his hair, bathe himself, and dress. *Id*. at 171–72. He also prepares his own "complete meals" every day, and then does the dishes. *Id*. at 172. Lowes reported that he shops for groceries and clothes once a month for approximately three hours, and his hobbies include fishing and hunting, which he does "3 Times in the Summer[.]" *Id*. at 173, 174. Lowes did make clear, however, that he only hunts with assistance. *Id*. at 174. Notably, at no point in any of the materials contained in

the Administrative Record did Lowes indicate that his vision restricts his ability to work or perform daily activities; or, for that matter, bothers him in any way whatsoever.

**B**

Lowes's two applications for benefits were both denied by the Commissioner on September 3, 2009. *Id*. at 39–42. So he requested a hearing before an Administrative Law Judge (ALJ). The request was granted, and a hearing was conducted by ALJ Donald D'Amato on August 24, 2010. *Id*. at 24. Lowes was represented by current counsel (Philip Fabrizio) at the hearing. *Id*.

During the hearing, Lowes identified his age, birth date, and address, and he indicated that he "finished the eighth grade." *Id*. at 27–28. Judge D'Amata acknowledged Lowes's cognitive impairment, and his history of a left hernia. *Id*. at 28. He then asked, "Is there anything else?" *Id*. at 29. Mr. Fabrizio indicated that Lowes also "thinks maybe he has a hernia on the other side as well, but that hasn't been treated as yet." *Id*. Mr. Fabrizio did not raise any other impairments for Judge D'Amata's consideration. At no point during the hearing did he mention Lowes's vision, or any related impairments.

On October 22, 2010, Judge D'Amata issued an unfavorable decision, denying Lowes's claim for benefits. *See id*. at 10–20. Although Judge D'Amata determined that Lowes "has not engaged in substantial gainful activity since December 31, 2006" and suffers from "the following severe impairment: mild mental retardation," *id*. at 12, he concluded that Lowes's severe impairment does not "meet[] or medically equal[] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," *id*. at 13. Specifically, Judge D'Amata determined that Lowes did not meet the listed impairments of § 12.05(A), (B), (C), or (D). *Id*. at 13–15.

Despite noting Lowes's "full-scale IQ score of 59" from 1982, Judge D'Amata indicated that "it is not a true picture of the claimant's ability to function today." *Id*. at 13. Instead of relying solely on the isolated score of 59, Judge D'Amata emphasized Lowes's "full-scale IQ score of 68" from 2009, and the fact that he "successfully engaged in substantial gainful activity over several years. In 1997, 1998, 1999, and 2006, the claimant worked at substantial and gainful levels earning $8[,]419.14, $11,137.87, $10,172.45 and 10,107.98, respectively." *Id*. at 13 (citation omitted). Moreover, Judge D'Amata considered Lowes's report "that he manages his own personal care, prepares complete meals, performs household chores, pays his bills, and attends church on a weekly basis." *Id*. (citation omitted). Judge D'Amata then concluded that § 12.05(B) was not satisfied.

Judge D'Amata indicated that although Lowes received numerous IQ scores between 60 and 70, "there is no evidence that the claimant has another mental or physical impairment that affects his work performance." Judge D'Amata noted that aside from an IQ measurement between 60 and 70, § 12.05(C) "requires another physical or mental impairment that imposes an additional work-related limitation." *Id*. at 14. He then established that "[t]he only physical impairment in the record is the claimant's status post-left inguinal hernia repair, a non-severe impairment. There is no evidence that the claimant's prior hernia operation affects his current ability to perform basic work activities." *Id*. Observing no other impairment, "mental or physical, that imposes another significant work-related limitation of function[,]" Judge D'Amata concluded that Lowes's was not entitled to benefits.[2]

---

[2] Judge D'Amata also determined that Lowes did not satisfy the requirements of Listings § 12.05(A) and (D). Admin. R. 13–14. Judge Hluchaniuk's report and recommendation also addressed those Listings, indicating that neither entitled Lowes to benefits. *See* Report & Recommendation 19 n.1. Lowes's objections make no mention of the Listings, and thus they will not be discussed in this Opinion.

On or around November 12, 2010, Lowes requested that the ALJ's decision be reviewed by the Social Security Appeals Counsel. *Id*. at 98. When that request was denied, Lowes filed an action in this Court on July 12, 2012.

## C

On November 29, 2012, Lowes filed a motion for summary judgment. He emphasized his IQ score of 59 from 1982, and argued that Judge D'Amata erred in concluding that the requirements of § 12.05(B) were not satisfied. He also argued that his impairments are sufficient to satisfy § 12.05(C) as well, because along with his mental impairments he suffers from "significant visual motor coordination defects[.]" Pl.'s Mot. 24, ECF No. 11. Approximately one month later, on December 28, 2012, the Commissioner filed a motion for summary judgment as well. He argued that substantial evidence supports Judge D'Amata's finding that Lowes is not disabled.

Both motions were referred to Judge Hluchaniuk for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On July 17, 2013, Judge Hluchaniuk issued his report, recommending that the Commissioner's motion be granted and that Lowes's motion be denied. Judge Hluchaniuk focused on the fact that Lowes received results from two IQ tests that placed him squarely between 60 and 70, and accordingly, the score of 59 did not control the issue. Judge Hluchaniuk also concluded that Lowes's argument concerning visual impairments was "misplaced," as there was no evidence to support a finding that visual impairments limited Lowes's ability to work. Report & Recommendation 27, ECF No. 15.

Lowes filed objections to Judge Hluchaniuk's report on July 25, 2013. He raises three specific objections: (1) the conclusion that the 1982 IQ score of 59 did not satisfy § 12.05(B) was erroneous; (2) the conclusion that Lowes's IQ scores between 60 and 70, when combined with

his visual impairment, did not satisfy § 12.05(C) was erroneous; and (3) the school psychologists were "treating doctors" entitled to deference.

## II

Under the Social Security Act (SSA), a claimant is entitled to disability benefits if he can demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Lowes carries the burden of establishing that he meets this definition. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012). Corresponding federal regulations outline a five-step sequential process to determine whether an individual qualifies as disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The procedure is as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). This Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations

omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

Relevant here, 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05 (§ 12.05) encompasses "[m]ental retardation" listings for purposes of the five-step process outlined above. In full, it provides as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>>
>> OR
>>
>> B. A valid verbal, performance, or full scale IQ of 59 or less;
>>
>> OR
>>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>>
>> OR
>>
>> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>>
>>> 1. Marked restriction of activities of daily living; or
>>>
>>> 2. Marked difficulties in maintaining social functioning; or
>>>
>>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

> 4. Repeated episodes of decompensation, each of extended duration.

In essence, a claimant must make two showings to satisfy § 12.05(B): (1) that he experiences significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (before age 22); and (2) a valid verbal, performance, or full-scale IQ of 59 or less. Similarly, to satisfy § 12.05(C), a claimant must demonstrate three things: (1) that he experiences significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; (2) that he has a valid verbal, performance, or full scale IQ of 60 through 70; and (3) that he suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function. *W. v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (citation omitted).

Section 12.00(D)(6) establishes guidance for applying intelligence tests in the context of § 12.05. Pursuant to § 12.00(D)(6)(a):

> The results of standardized intelligence tests may provide data that will help verify the presence of mental retardation . . . . However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

*Id*. Further, "where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." § 12.00(D)(6)(c).

### III

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). If objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition

that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Lowes's three objections pertain to three different issues. He first claims that his 1982 full-scale IQ score, without more, entitles him to benefits. He next claims any of his IQ scores, along with his visual impairments, entitle him to benefits. Finally, he argues that the school psychologist who administered the 1982 tests deserves particular deference. Each issue will be explored below.

### A

Lowes's first argument may be summarized as follows: his 1982 IQ score of 59, regardless of anything else, qualifies him for benefits. Lowes is incorrect, and his first objection will be overruled.

Noted above, § 12.05(B) requires a valid verbal, performance, or full scale IQ of 59 or lower for entitlement to benefits. And, pursuant to § 12.00(D)(6)(c), it is the lowest score (between verbal, performance, and full-scale IQ results) that counts for purposes of § 12.05(B). In 1982, at the age of 11, Lowes obtained a verbal IQ score of 66, a performance IQ score of 60, and a full-scale IQ score of 59. Admin. R. 220. Accordingly, it appears he has satisfied § 12.05(B) (as the question of subaverage intellectual functioning manifest during the developmental period is not in dispute). However, only four years later, Lowes took an IQ test and all three scores were above 60 (62, 72, 65). He was tested again in 2009, and again all three scores were above 60 (69, 73, 68). So the question becomes, is the isolated test score of 59 from 1982 sufficient to entitle Lowes to benefits? The Court concludes, like Judge D'Amata and Judge Hluchaniuk before, that it is not.

Lowes argues there should have been an "automatic" award of benefits because of his IQ score of 59. Pl.'s Obj. 8. This argument, however, is misguided. The Sixth Circuit's decision in

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713 (6th Cir. 2012) is particularly instructive on the point. There, the court addressed a claimant found "to have a full scale IQ score of 59, verbal IQ of 61, and performance IQ of 65." *Id*. at 716. The ALJ determined the IQ score of 59 "was an underestimate of Claimant's abilities, especially in light of her extensive work history and activities of daily living." *Id*. at 717. The ALJ also considered the claimant's "prior, higher IQ score" in determining she did not satisfy the requirements of § 12.05(B). *Id*.

A reviewing district court, and then the Court of Appeals for the Sixth Circuit, concluded that there was substantial evidence to support the ALJ's decision. The Sixth Circuit noted that a court "defer[s] to the ALJ's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'" *Id*. at 721 (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). The court established that "the mere fact of a qualifying IQ score does not require that the ALJ find mental retardation under Section 12.05B when substantial evidence supports the contrary conclusion[.]" *Courter*, 479 F. App'x at 721.

In this case, although Lowes once obtained a score of 59 (it must be remembered, at the age of 11), he was evaluated twice since that time and never again scored so low. Additionally, many of the factors relevant in *Courter* are present here. There, the ALJ relied on the fact that the claimant "was able to care for herself and her father's apartment, including cooking, cleaning, shopping, keeping track of her medical appointments, and maintaining personal hygiene." *Id*. When combined with the claimant's "extensive prior work history," it was sufficient evidence to weigh against a finding of mental impairment under § 12.05(B). *Id*.

In this case, the record establishes that Lowes cares for his own personal needs (hygiene, shopping, paying bills), and that he cares for family pets. He also cultivates hobbies in the great

outdoors (hunting, fishing, and taking walks), and has an extensive history of various low-skilled jobs. Along with his more recent IQ scores—all above 60—this evidence weighs heavily against a finding of impairment under § 12.05(B). As in *Coulter*, substantial evidence supports the Commissioner's conclusion that Lowes does not satisfy the requirements of § 12.05(B), and that conclusion will be affirmed.

**B**

In his second objection, Lowes contends that his IQ scores between 60 and 70 are sufficient to entitle him to benefits when combined with his visual impairments, satisfying the requirements of § 12.05(C). The Court disagrees.

Specifically, Lowes contends "test results indicate that there is significant impairment in his visual motor coordination." Pl.'s Obj. 10 (emphasis and citation omitted). He argues that "while the issue was extensively raised in the Plaintiff's Brief, the R&R does not deal with the issue[.]" *Id*.

Taking Lowes's second point first, Judge Hluchaniuk's report did address the argument that his visual impairment, when combined with his IQ scores, satisfies the requirements of § 12.05(C). Judge Hluchaniuk wrote as follows:

> Plaintiff's reliance on the state agency consultative examiner's finding that "[plaintiff's] Bender Gestalt test results indicate that there is significant impairment in his visual motor coordination" as evidence of a physical or mental impairment that imposed an additional work-related limitation and thus satisfying the Listing, is misplaced. The examiner never opined that this finding from one of the tests administered evidenced a physical or mental impairment imposing an additional work-related limitation on plaintiff within the meaning of Listing 12.05C, and plaintiff has not cited any record evidence that would support such a finding. Moreover, the state agency reviewing psychologist, Dr. Leonard C. Balunas, Ph.D., did not find any similar significant limitation and opined that plaintiff "is able to perform simple, routine unskilled work involving 1 and 2 step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting."

Report & Recommendation 26–27 (citations omitted).

To Lowes's first point—that his visual impairments impose significant work-related limitations—the Court is not persuaded.

Lowes argues that his visual impairments satisfy the additional work-related limitation requirement of § 12.05(C). He complains that the ALJ "failed to even cite or mention this additional significant limitation." Pl.'s Obj. 12. But Lowes himself did not raise this issue when applying for SSD benefits, nor did he (or his attorney, for that matter) identify the issue during the administrating hearing in front of Judge D'Amata. There is some support for the idea that this claimed limitation, never before raised, has been waived.

In *Chereza v. Comm'r of Soc. Sec. Admin.*, 379 F. App'x 934 (11th Cir. 2010), the Eleventh Circuit addressed a claimant that presented evidence of a hearing impairment only to the Appeals Counsel, not in her application for benefits or during the hearing before an ALJ. The court concluded that "the ALJ did not have an opportunity to consider [the impairment]," and that because "the claimant bears the burden of producing evidence of her disability" it was appropriate to disregard the impairment. *Id*. at 941; *see also Watters v. Comm'r of Soc. Sec. Admin.*, No. 12-2454, 2013 WL 3722099, at *6 (6th Cir. July 17, 2013) ("The ALJ was under no obligation to investigate Watters's case for him."); *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005)("an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."); *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (same).

However, the Supreme Court has indicated that given the non-adversarial process involved in Social Security proceedings, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103,

110–11 (2000) (citation omitted). Noting this duty, the Third Circuit has established that "[p]utting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings[.]" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000).

But even under the Third Circuit's standard, where Judge D'Amata could be expected to take the extraordinary measure of digging through the Administrative Record to identify limitations Lowes himself did not raise—Lowes's alleged impairments do not impose an additional and significant work-related limitation, and accordingly, § 12.05(C) is not satisfied.

As a part of his psychological evaluations, Lowes completed the Bender Gestalt Test. "The test is used to evaluate 'visual-motor maturity,' to screen for developmental disorders, or to assess neurological function or brain damage." *Bender-Gestalt Test*, www.Wikipedia.org, http://en.wikipedia.org/wiki/Bender-Gestalt_Test (last visited August 9, 2013). While discussing the results of Lowes's 1982 evaluation, Mr. Green indicated that "[t]he graphics indicated immature fine-motor coordination and visual-motor perceptual deficits[.]" Admin. R. 221. Then, during the 2009 test, the evaluator noted that Lowes's "Bender Gestalt test results indicate that there is significant impairment in his visual motor coordination." *Id*. at 233. Lowes concludes, based on these isolated references alone, that his vision imposes significant work-related limitations.

But the evidence from the record belies this contention. Indeed, Lowes has presented no evidence that visual limitations affect his work or his daily life. Lowes testified that he has a driver's license, and can read and understand stop signs and speed limit signs while driving.[3] *Id*. at 29. On his benefits applications, Lowes indicated it was learning disabilities and a previous

---

[3] At this point, however, Lowes does not drive because he does not own a car. Admin. R. 173.

hernia surgery that limit his ability to work, he made no mention of visual impairments. *Id*. at 137. When questioning Lowes during the administrative hearing, Mr. Fabrizio did not ask one question about his vision, or how it may affect his work (he did, however, ask questions concerning Lowes's hernia and mental impairment). *Id*. at 32–33. In a work-history report, Lowes indicated that he was able to handle small objects in many of his previous employment settings: dishes as a dishwasher; tubs as a fireplace installer; groceries as a store clerk and stock worker; oil filters as a machine operator; and various food items at McDonald's. *Id*. at 161–67.

Further, Lowes's 1985 evaluation indicated that his "best efforts were in [illegible] attention to detail, and *visual motor coordination*." *Id*. at 200 (emphasis added). An October 22, 1987 Individualized Education Planning Committee Report for the Pontiac School District established that he was "Mentally Impaired," but also that he did not have any visual impairments. *Id*. at 194. Finally, a January 14, 2009 examination revealed "no acute abnormalities" with Lowes's ocular function, along with notations of PERRLA[4] and EOMI.[5]

An impairment "imposes a significant work-related limitation of function 'when its effect on a claimant's ability to perform basic work activities is more than slight or minimal.'" *Mc Gill v. Callahan*, No. 96-16964, 127 F.3d 1105, at *1 (9th Cir. 1997) (quoting *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987)). In this case, Lowes has not shown his vision imposes any work-related limitations, much less significant limitations. So even if Lowes's visual impairment is considered—despite the fact that neither he nor his attorney raised it at any point before filing an

---

[4] "Abbreviation for Pupils Equal, Round, React to Light, and Accommodation. While performing an assessment of the eyes, one evaluates the size and shape of the pupils, their reaction to light, and their ability to accommodate. If all findings are normal, the abbreviation [PERRLA] is noted in the account of the physical examination." *PERRLA*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/PERRLA (last visited August 9, 2013).

[5] Abbreviation for Extra Ocular Movement (or Muscles) Intact." *EOMI*, The Free Dictionary, http://acronyms.thefreedictionary.com/EOMI (last visited August 9, 2013).

action in this Court—it does not entitle him to benefits. Any failure on the part of Judge D'Amata to consider the impairment, if indeed it was a failure, was harmless. *See Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (harmless error is not reversible error). Lowes has not satisfied the requirements of § 12.05(C), and his related objection will be overruled.[6]

C

With his final objection, Lowes contends that Mr. Green, who conducted Lowes's 1982 psychological evaluation, is entitled to deference as a "treating doctor." Pl.'s Obj. 13. Lowes is once again mistaken, this objection will be overruled, and the Commissioner's decision will be affirmed.

Apparently, Lowes believes that if Mr. Green is considered a "treating doctor," the IQ score of 59 will carry additional weight and satisfy § 12.05(B). But, noted above, "the mere fact of a qualifying IQ score does not require that the ALJ find mental retardation under Section 12.05B when substantial evidence supports the contrary conclusion[.]" *Courter*, 479 F. App'x at 721.

Moreover, Mr. Green is simply not properly considered a "treating doctor" pursuant to 20 C.F.R. § 404.1527(c). The regulations make clear that "[w]hen the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." § 404.1527(c)(2)(i). But based on the record, Mr. Green only evaluated

---

[6] Lowes also argues that because the ALJ relied upon the 2009 psychological examination, he "endorsed" the finding of a significant impairment of Lowes's visual motor coordination, and "there is thus, in effect, a finding by the ALJ that claimant has an IQ between 60 and 70 and an additional 'significant' limitation[.]" Pl.'s Obj. 11. Even if Judge D'Amata's reliance on the psychological report does constitute an implicit adoption of every sentence therein, Dr. Balunas (who authored the report) never indicated Lowes's visual impairments impact his ability to work, which § 12.05(C) requires for entitlement to benefits.

Lowes one time. The Sixth Circuit has established that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529–30 (citation omitted).

Lowes's argument—that Green is a treating doctor because he was not hired for litigation and was seeing Lowes in the ordinary course of business—is misplaced. Just because a doctor sees a patient in the ordinary course of business, and outside the context of litigation, does not entitle that doctor's opinions to greater weight. It is a doctor's ongoing treatment of an individual, over multiple visits, that entitles his or her opinions to significant weight; given the unique knowledge repeat assessments provide. That is not the case here. Lowes has only demonstrated that Mr. Green assessed him once, and thus the gentleman is not properly considered Lowes's treating physician.

Lowes's contention that this issue is already decided because the Commissioner "fails to argue," and has thus waived any point to the contrary, is incorrect. This Court is tasked with determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. This Court must determine whether it was proper to consider Mr. Green a non-treating physician, regardless of the Commissioner's arguments. Because Mr. Green is not a treating physician, it was not erroneous for Judge D'Amata to consider his opinions without additional deference.

### IV

Accordingly, it is **ORDERED** that Lowes's objections, ECF No. 16, are **OVERRULED**.

It is further **ORDERED** that Judge Hluchaniuk's report and recommendation, ECF No. 15, is **ADOPTED**.

It is further **ORDERED** that the Commissioner's motion for summary judgment, ECF No. 13, is **GRANTED**.

It is further **ORDERED** that Lowes's motion for summary judgment, ECF No. 11, is **DENIED**.

It is further **ORDERED** that the Commissioner's decision to deny benefits is **AFFIRMED**.

It is further **ORDERED** that Lowes's complaint, ECF No. 1, is **DISMISSED**.

Dated: August 15, 2013                                       s/Thomas L. Ludington
                                                                      THOMAS L. LUDINGTON
                                                                       United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2013.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS